**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| RICK ALAN E.,[1] ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CIVIL ACTION** |
| v. ) | |
| ) | **No. 21-1266-JWL** |
| KILOLO KIJAKAZI, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Commissioner of Social Security

denying Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI)

benefits pursuant to sections 216(i), 223, 1602, and 1614, Title II and Title XVI,

respectively, of the Social Security Act.  42 U.S.C. §§ 416(i), 423, 1381a, and 1382c

(hereinafter the Act).  Finding no error in the Administrative Law Judge's (ALJ)

decision, the court ORDERS that judgment shall be entered pursuant to the fourth

sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

**I.     Background**

---

[1] The court makes all its "Memorandum and Order[s]" available online.  Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

Plaintiff protectively filed applications for DIB and SSI benefits on March 17, 2016.  (R. 470-80).  After denials by the state Disability Determination Service at the initial and reconsideration levels, further development of the record, and a hearing, ALJ Susan Toth issued a partially favorable decision finding that Plaintiff was not disabled on his alleged disability onset date but that his condition worsened and he became disabled beginning March 15, 2016.  (R. 225-35).  She noted the record contained medical evidence of a substance use disorder(s) and found that the "substance use disorder(s) is not a contributing factor material to the determination of disability."  Id. at 234.  On its own motion pursuant to 20 C.F.R. §§ 404.969 and 416.1469, the Appeals Council reviewed ALJ Toth's decision and found an error of law and that the decision was not supported by substantial evidence.  (R. 244).  The Appeals Council then issued an order vacating the prior decision and remanding to the ALJ tor further proceedings in accordance with its order, including to offer Plaintiff "an opportunity for a hearing, take any further action needed to complete the administrative record and issue a new decision."  Id. at 248.

On remand the ALJ conducted further proceedings including holding another hearing, and issued a new decision finding that, considering substance abuse, Plaintiff's condition meets the criteria of Listing 12.11, but that if he were to stop the substance use he would be able to perform jobs existing in significant numbers in the national economy. Id. at 20-33.  After being denied further review by the Appeals Council, Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  Plaintiff claims ALJ Toth erred because she did not explain why she reached a

materially different residual functional capacity (RFC) assessment in her second decision, although she relied on the same facts relied upon in her first decision.  (Pl. Br. 16-20). He also argues "the ALJ failed [to] develop the record with respect to [Plaintiff's] physical impairments as required by the Appeals Council" and consequently her decision is not supported by substantial evidence.  Id. at 20.

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether she applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  "Substantial evidence" refers to the weight, not the amount, of the evidence.  It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it."  I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord,

Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala,

36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record,

nor try the issues de novo, nor substitute [the Court's] judgment for the

[Commissioner's], even if the evidence preponderates against the [Commissioner's]

decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988) (brackets in

Bowling)).  Nonetheless, the determination whether substantial evidence supports the

Commissioner's decision is not simply a quantitative exercise, for evidence is not

substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.

Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a

claim for disability.  20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136,

1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).

"If a determination can be made at any of the steps that a claimant is or is not disabled,

evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting

Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether

claimant has engaged in substantial gainful activity since the alleged onset, whether he

has a severe impairment(s), and whether the severity of his impairment(s) meets or equals

the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt.

P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner

assesses claimant's RFC.  20 C.F.R. §§ 404.1520(e), 416.920(e).  This assessment is used

at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining

at step four whether, considering the RFC assessed, claimant can perform his past

relevant work; and at step five whether, when also considering the vocational factors of

age, education, and work experience, he is able to perform other work in the economy.

Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the

burden is on Plaintiff to prove a disability that prevents performance of past relevant

work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter,

245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the

burden shifts to the Commissioner to show that there are jobs in the economy which are

within the RFC previously assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th

Cir. 1999).  The court addresses the errors alleged in the order presented in Plaintiff's

Social Security Brief.

## II.    Differences Between ALJ Toth's First and Second Decisions

Plaintiff points to differences between the first decision wherein ALJ Toth found

Plaintiff became disabled beginning March 15, 2016, and his substance use was not a

contributing factor material to the determination of disability; and the second decision

wherein she found Plaintiff's condition meets a Listed impairment but his substance use

was a contributing factor material to the determination of disability because if he stopped

using substances he would be able to perform a range of light work and was therefore,

not "disabled within the meaning of the Social Security Act at any time from the alleged

onset date through the date of this decision."   (Pl. Br. 17-19) (R. 32) (quotation from

finding no. 11, bold omitted).

5

The Commissioner argues ALJ Toth's first decision was not the final decision of

the Commissioner and had no binding effect over the ALJ for the second decision which

became the final decision of the Commissioner when the Appeals Council denied

Plaintiff's request for review of that decision.  (Comm'r Br. 8) (citing Gonzales v.

Colvin, 515 F. App'x 716, 720-21 (10th Cir. 2013) (principles of administrative res

judicata do not bind an ALJ, in a second decision, to accept the findings in a first, non-

final ALJ decision)).  She goes on to argue that substantial record evidence supports the

finding in the second decision that Plaintiff is capable of a range of light work.  Id. 9-11

In his Reply Brief Plaintiff argues "res judicata principles would not apply in this

case because there is only one final decision dated May 5, 2021."  (Reply 2).  He argues

he "is not suggesting that the Court [sic] consider any information from a prior filing,"

the claims at issue here were based on the same medical records, and "the same ALJ

presided over both hearings and issued only one final decision."  Id. (citing Herrman v.

Colvin, Civ. A. No. 12-1362-JWL; 2014 U.S. Dist. LEXIS 24245; 2014 WL 789206, *7

(D. Kan. Feb. 26, 2014) for the proposition that errors from the first decision that was

vacated by Appeals Council are not relevant in the review of the final decision issued by

a different ALJ).  He argues we know the ALJ's rationale from the first decision, the

Appeals Council did not question the ALJ's evaluation of Plaintiff's physical RFC in

vacating the first decision, and therefore "the decisions should be consistent when there is

minimal analysis about the change" in rationale between the two decisions.  Id. (citing

Gonzales v. Kijakazi, No. CV 21-111-CG; 2022 U.S. Dist., LEXIS 93677, *18; 2022 WL

1664401, *5 (D.N.M May 25, 2022) "in which Commissioner [sic] argued that the

Appeals Council had no issues with how the vocational testimony [sic] in their remand order, so it was acceptable to rely on those findings in s [sic] subsequent decision."). Plaintiff argues ALJ Toth's evaluation of Dr. Eades's opinion was different in the second decision than in the first decision and the lack of an explanation of the difference "does not allow for meaningful review." (Reply 3).

### A.     Preliminary Discussion

Both parties are correct to point out that there is only one final decision in a Social Security case. And, as both parties agree and the Appeals Council explained in its "Notice of Appeals Council Action," the final decision in this case is the "Administrative Law Judge's decision dated May 5, 2021." (R. 6). Any other evidence in the administrative record is just that—evidence in the administrative record, which in this case consists of 1167 pages of evidence organized in a preliminary section of 147 pages (Index 1) and five Exhibit sections, A, B, D, E, and F. (Index 1-Index 5). As noted above, in judicial review, there are only two questions before the reviewing court; whether the ALJ's factual findings are supported by substantial evidence in the record and whether she applied the correct legal standard. Lax, 489 F.3d at 1084; White, 287 F.3d at 905. Thus, it is irrelevant to judicial review that ALJ Toth produced two written decisions at two different times, the first of which was reviewed by the Appeals Council and vacated and remanded for further specific actions (R. 247); conditional actions, id. at 247-48; and other actions as desired or necessary, id. at 248, and the second for which the Appeals Council denied review and consequently called the final decision of the Commissioner. Id. at 6.

7

In his first allegation of error in the ALJ's final decision Plaintiff claims the ALJ

erred by finding Plaintiff capable of light work rather than limiting him to sedentary work

as she did in the first decision.  (Pl. Br. 16-17).  He argues that the ALJ accorded Dr.

Eades's opinion significant weight in the first opinion and erroneously accorded the same

opinion limited weight in the second decision.  He argues the evidence ALJ Toth relied

upon in the second decision was "selective and in several instances incomplete, irrelevant

or out of context."  Id. at 18.   Plaintiff argues ALJ Toth's second decision "provided no

insight as to why her opinion regarding the weight given to the opinion changed from the

first decision to the second decision."  Id. 19.  The differences between ALJ Toth's two

opinions are irrelevant and will not be considered in the court's decision.  What will be

considered is whether the final decision is supported by substantial evidence—"such

relevant evidence as a reasonable mind might accept as adequate to support a

conclusion."  Perales, 402 U.S. at 401.

### B.      The ALJ's Findings

ALJ Toth found Plaintiff has physical impairments of degeneration of the

cervical/lumbar spine and breathing disorder which are severe within the meaning of the

Act.  (R. 23).  She noted that if Plaintiff stopped his substance use, his severe physical

impairments would remain.  Id. at 25.  The ALJ found Plaintiff's "lumbar impairment

does not meet the requirements of listing 1.15."  Id. 26.  The ALJ found Plaintiff can

perform a range of light work with additional postural and environmental limitations to

frequent climbing of ramps, stairs, ladders, ropes, and scaffolds, frequent stooping and

crawling, and only occasional exposure to hazards or "to extremes of heat and cold,

humidity and fumes, odors, dusts, gases, poor ventilation and other pulmonary irritants."

(R. 27) (finding no. 6, bold omitted).

The ALJ noted "the Appeals Council decision focuses on the claimant's mental

health issues, but the claimant also has severe impairments in terms of spinal

osteoarthritis at the cervical and lumbar levels, along with breathing disorders that would

reasonably limit him to a light exertional level." Id. at 28.  She discussed Plaintiff's

testimony regarding physical abilities:

> The claimant testified he could not work full-time.  He seemed to focus on
> his mental health deficits, but did note that he is still being treated for
> breathing issues.  However, he also noted that he could mow the lawn as
> long as others were not around as people make him nervous.  He noted that
> he was still smoking but had cut "way down."  …  He noted that his asthma
> and sciatica were the primary physical reasons for not working, and
> although he had migraines in the past, they had abated.

Id.  She found Plaintiff's "statements concerning the intensity, persistence, and limiting

effects of [his] symptoms are not entirely consistent with the medical evidence and other

evidence in the record for the reasons explained in this decision."  Id.

The court quotes the ALJ's discussion of Plaintiff's physical impairments and the

medical opinions regarding physical limitations:

> The claimant has been treated for breathing disorders.  He has been
> prescribed a nebulizer, a daily medication and an inhaler to compensate.
> (Exhibit 1F).  The claimant stopped smoking but continued to suffer
> impacts such as dyspnea and fatigue.  Spirometry in June 2018 showed
> severe mixed obstructive and restrictive pattern with partial reversal of the
> obstruction with treatment. (Exhibit B9F).  This impairment is consistent,
> and contributes to a light exertional level due to dyspnea and fatigue,
> postural restrictions such as climbing, restrictions against dangerous
> working conditions, as well as pulmonary limitations noted above.

The claimant has also been limited due to back pain.  Medical imagery showed problems with the lumbar spine at L3-L5, with degenerative changes. (Exhibit B2F at 1, B7F at 1).  Medical imagery also showed some cervical spondylosis degeneration at C4-5. (Exhibit B7F at 2).  The claimant has complained of waxing and waning back pain symptoms, which appear to be exacerbated by movement and activities. (Exhibit B4F, B8F, B9F).  At a consultative examination, the claimant was diagnosed with asthma and degenerative arthritis in the back. (Exhibit B7F).  He reported left leg radiculopathy, with some numbing.  While some range of motion was limited, overall this one-time examination found the claimant had no limits.  This medical opinion is given little weight, as it is not consistent with the longitudinal evidence, including multiple examinations that show pain in the lower back and dyspnea with the claimant's COPD asthma.  It also does not figure in the claimant's neck pain issues.

The prior administrative finding and opinion by Dr. Carol Eades, M.D. is given limited weight.  She was not an examining physician, and the longitudinal evidence does not support a limitation to a sedentary exertional level.  For example, in 2014, he had normal motor strength, and gait within a normal limit. (Exhibit B2F at 1, B14F at 7).  A consultative examination at B7F did not support limitations beyond those in the RFC above, and while some wheezing was noted, the claimant was a smoker (as well as his SA contribution). (Exhibit B9F at 9, 16).  The claimant's asthma was found to be moderate, and he was using an inhaler for symptom prevention. (Exhibit B14F at 5).  He had no problems with standing, walking, and sitting in the latest medical evidence, which undermines the sedentary limitation of this opinion. (Exhibit B18F at 3). This supports a light more than a sedentary exertional level. This opinion is therefore not well supported and not consistent with the evidence as a whole, including the latest medical evidence. (Exhibit B11F).  The initial finding at Exhibit B4A is not a medical opinion from a medical source.

The opinion at Exhibit B7F is given little weight.  This is a one-time examination where the claimant showed only minimal wheezing, and he could rise from sitting without assistance, with normal gait/station, ability to stand on toes, heel/tandem walk, bend, squat, all without difficulty.  He opined the claimant could stand, sit, walk for a full workday, and lift/carry without specific limitations.  This seems somewhat vague, and is not a good basis for decisionmaking, as the claimant does suffer from some back pain issues, and would not be able to lift without limit.  This is not well explained, and while it generally supports the light exertional level in terms of what the claimant can do, it does not opine effectively regarding his limits.

The undersigned finds that physically, the claimant is limited to light work, with postural limitations, limitations away from hazardous working conditions and pulmonary irritants.  He can perform physical tasks within the RFC above.

(R. 28-29).

### C.      Analysis

Plaintiff argues that the ALJ's decisions made identical statements about the evidence of pulmonary impairments and back impairments except that in the first decision she found the evidence consistent with sedentary work whereas in the final decision she found the evidence consistent with light work.  He argues that the ALJ found Dr. Eades's opinion consistent with the medical evidence and accorded it significant weight in the first decision whereas in the final decision she discounted the opinion because Dr. Eades "was not an examining physician and the longitudinal evidence does not support a limitation to a sedentary exertional level."  (Pl. Br. 17) (quoting R. 29).

This situation is quite similar to the situation frequently presented to the court in a Social Security case where the Commissioner's Brief presents the ALJ's findings which she asserts are supported by substantial evidence and the plaintiff's Brief argues that the contrary finding is supported by substantial evidence.  The Supreme Court long ago recognized that such a situation might occur where an agency is considering an administrative record which might be viewed as equivocal.  It held, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966).  The Tenth Circuit has

11

held that when applying the substantial evidence standard the court may not "displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." Lax v. Astrue, 489 F.3d at 1084.  The only difference between the situation frequently presented to this court and this case is that Plaintiff here is pointing to an earlier, vacated decision of the ALJ, implying that it is supported by substantial evidence and arguing that the ALJ should have explained why she changed her decision.  Plaintiff points to no authority, and the court finds none, requiring an ALJ to articulate a reason for changes in her decision after an earlier decision has been vacated.  As always in judicial review, the question is whether substantial evidence supports the final decision even if substantial evidence might also support a contrary decision.

Plaintiff's arguments against discounting Dr. Eades's opinion in the second decision go to the weight of the decision and would require this court to reweigh the evidence, a proposition from which it is forbidden.  (Pl. Br. 18).  He does not point to evidence compelling a different finding.  Plaintiff's argument that the evidence cited as the "latest medical evidence" by ALJ Toth was not in fact the latest evidence misunderstands the decision.  As quoted above, the ALJ found Plaintiff "had no problems with standing, walking, and sitting in the latest medical evidence, which undermines the sedentary limitation of this opinion.  This supports a light more than a sedentary exertional level."  (R. 29) (citing Ex. B18F at 3, R. 1127) (emphasis added).  As the ALJ noted, Exhibit B18F is the latest medical evidence, the remaining evidence in the F section of the exhibits deals with the medical interrogatories sought by the ALJ.

12

Moreover in the page cited, Dr. Hackney specifically stated, "He had no trouble walking, sitting, or standing." (R. 1127). The ALJ then concluded her evaluation of Dr. Eades's opinion, "This opinion is therefore not well supported and not consistent with the evidence as a whole, including the latest medical evidence." (R. 29) (citing Ex. B11F). The ALJ had already identified and cited the "latest medical evidence." "Ex. B11F" is merely a citation to another treatment record demonstrating Dr. Eades's opinion is not well supported and not consistent with the evidence as a whole. The court makes one final note in this regard. Although as Plaintiff notes Dr. Hackney is a Psychologist, not a physician, he specifically noted plaintiff had no trouble walking, sitting, or standing and that observation by a mental health professional in the introduction to his mental status examination is precisely "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"—substantial evidence. Perales, 402 U.S. at 401.

Plaintiff's complaint that the ALJ relied upon the consultative exam at exhibit B7F to accord limited weight to Dr. Eades's opinion and then also accorded limited weight to that opinion (Pl. Br. 19) does not require a change in the court's analysis. The ALJ explained this alleged inconsistency, noting the opinion expressed in exhibit B7F "is not well explained, and while it generally supports the light exertional level in terms of what the claimant can do, it does not opine effectively regarding his limits." (R. 39) (emphasis added). Thus, she relied on that opinion to discount Dr. Eades's suggested limitation to sedentary work and relied upon the record as a whole to find that Plaintiff was nonetheless limited to light exertion.

Plaintiff's argument the ALJ cited only two treatment records after the date of the first decision suggests, without citing a basis, that the ALJ must have determined Plaintiff's capabilities improved after the first decision and ignores that the ALJ stated her RFC was assessed "[a]fter careful consideration of the entire record" (R. 27) (finding no. 6, bold omitted), and that "the longitudinal evidence does not support a limitation to a sedentary exertional level." Id. at 29.  Finally, Plaintiff's assertion that "the ALJ never reference[d] the Spirometry testing early in the medical records showing a severe defect" (Pl. Br. 19), ignores the ALJ's statement, "Spirometry in June 2018 showed severe mixed obstructive and restrictive pattern with partial reversal of the obstruction with treatment." (R. 28).

Substantial record evidence supports the physical RFC assessed and Plaintiff has shown no evidence which compels a different finding.

## III.    Duty to Develop the Record

Plaintiff argues "the ALJ failed [to] develop the record with respect to [Plaintiff's] physical impairments as required by the Appeals Council" and consequently her decision is not supported by substantial evidence.  (Pl. Br. 20).  He argues the ALJ did not obtain additional evidence about his impairments as ordered by the Appeals Council because she did not secure treating records for three appointments with Salina Family Healthcare Center (R. 675), three visits identified as made with providers at Salina Regional Hospital, id. at 673, and treatment indicated to have been given at Salina Regional Health Center.  Id. at 665.  Plaintiff argues the updated list of appointments was provided in October 2019 and acknowledges that at the hearing on April 20, 2020 he reported that he

14

could not think of any missing records or record that needed to be updated.  (Pl. Br. 20).

Plaintiff, who was unrepresented before the agency but is now represented by counsel

before the court points out, "The ALJ has a basic duty of inquiry to 'fully and fairly

develop the record as to material issues.  This duty is especially strong in the case of an

unrepresented claimant.'"  Id. (quoting Carter v. Chater, 73 F.3d 1019, 1021 (10th Cir.

1996)).  Counsel argues that Plaintiff's mother and sister signed appointment of

representative forms in June 2018 but argues, "The role of appointed representative and

the full implications of that role were never explained to [Plaintiff's sister].  Rather, the

ALJ explained that role as asking questions of the claimant and providing legal argument

rather than providing testimony."  Id. at 21(citing R. 91).  Counsel implies that the ALJ

failed to seek the records identified as missing at the hearing before her decision.  Id.

("the ALJ agreed to order the updated records from Salina Family Care (ER 95). Only the

records located at B14F appear to be submitted by the claimant").

The Commissioner argues further development of the record was not required in

this case.  She points out "the ALJ added 169 pages of records from Salina at Exhibit

B14F; three additional psychological consultative examinations at Exhibits B15F, B17F,

and B18F; and responses to medical interrogatories at B22F.  The ALJ also received

medical expert testimony at the April 2020 hearing."  (Comm'r Br. 12) (citation to the

record omitted).  The Commissioner argues the evidence referenced by Plaintiff is in the

record with the exception of one appointment for which the record indicates Plaintiff did

not show.  Id.  Finally, the Commissioner argues Plaintiff does not suggest how the

allegedly missing records would have changed the decision.  Id.  In his Reply Brief,

Plaintiff argues that because of the ALJ's failure to develop the record "we do not know what the current medical evidence would show." (Reply 3). He argues it was 16 months after Plaintiff provided his list of appointments before the ALJ issued her decision during all of which time the ALJ did not update the record. Id.

## A.   Standard for Evaluating the Duty

The Commissioner "has broad latitude in ordering consultative examinations." Hawkins v. Chater, 113 F.3d 1162, 1166 (10th Cir. 1997).

> [But, t]he ALJ has a basic obligation in every social security case to ensure that an adequate record is developed during the disability hearing consistent with the issues raised. This is true despite the presence of counsel, although the duty is heightened when the claimant is unrepresented. The duty is one of inquiry, ensuring that the ALJ is informed about facts relevant to his decision and learns the claimant's own version of those facts.

Henrie v. U.S. Dep't of Health & Human Servs., 13 F.3d 359, 360-61 (10th Cir. 1993) (citations, quotations, and brackets omitted). Further, under 20 C.F.R. § 404.1512(e), "[w]hen the evidence [the agency] receive[s] from [a claimant's] treating physician or psychologist or other medical source is inadequate for [the agency] to determine whether [the claimant is] disabled, [the agency] will need additional information to reach a determination or a decision."

Cowan v. Astrue, 552 F.3d 1182, 1187 (10th Cir. 2008).

> "Ordinarily, the claimant must in some fashion raise the issue sought to be developed which, on its face, must be substantial. Specifically, the claimant has the burden to make sure there is, in the record, evidence sufficient to suggest a reasonable possibility that a severe impairment exists." If []he does so, then the ALJ's duty to order a consultative examination arises. "Isolated and unsupported comments by the claimant are insufficient, by themselves, to raise the suspicion of the existence of a nonexertional impairment."

<u>Flaherty v. Astrue</u>, 515 F.3d 1067, 1071 (10th Cir. 2007) (quoting <u>Hawkins v. Chater</u>,

113 F.3d 1162, 1167 (10th Cir. 1997)) (citations omitted).

### B.      Analysis

To the extent Plaintiff argues the ALJ did not follow the Appeal Council's remand

order, the court disagrees.  The portion of the remand order to which Plaintiff appeals

instructs the ALJ to:

> Obtain additional evidence about the claimant's impairments in order to
> complete the administrative record (20 CFR 404.1512 and 416.912).  The
> additional evidence shall include updated evidence from the claimant's
> treating sources, if available, and updated consultative psychological
> examinations, if available, with medical source statements about what the
> claimant can still do despite the impairments.

(R. 247).  That is precisely what the ALJ did.  As the Commissioner noted in her Brief

> the ALJ added 169 pages of records from Salina [Family Healthcare
> System] at Exhibit B14F; three additional psychological consultative
> examinations at Exhibits B15F, B17F, and B18F; and responses to medical
> interrogatories at B22F ([R]. 41). The ALJ also received medical expert
> testimony at the April 2020 hearing ([R]. 65-74).

(Comm'r Br. 12).  The court's review of the record also reveals the Commissioner is

correct in explaining the record contains treatment notes for each of the appointments for

which Plaintiff alleges the ALJ did not seek treatment notes with the exception of one

appointment for which the record reveals he did not return for that visit.  (Comm'r Br.

12) (citing R. 675, 941, 942, 945, 947).  Thus, there can be no argument the ALJ did not

obey the remand order.

The remainder of Plaintiff's argument in this regard is that the ALJ failed in her

duty to fully and fairly develop the record.  The court finds no error in this respect.  The

17

ALJ fulfilled her duty of inquiry to ensure the record contained evidence sufficient upon which to make a disability determination and to ensure she was informed of claimant's version of those facts as required by Henrie, 13 F.3d at 360-61.  Counsel's suggestion that there may exist evidence produced after the hearing yet unsecured by the ALJ is insufficient to require remand.

Moreover, although Plaintiff was unrepresented before the Commissioner, he is represented before this court and counsel is aware, or should be aware, that sentence six of 42 U.S.C. § 405(g) provides the court may "order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."  42 U.S.C. § 405(g) (emphasis added). Plaintiff has not made that showing.  If such evidence exists, counsel should have presented it to the court and made the requisite showing.

Plaintiff has shown no error in the Commissioner's final decision.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated January 31, 2023, at Kansas City, Kansas.


s: / John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**